UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GAIL A. HARMON, | ) | CASE NO.:    5:09CV2765 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Gail Harmon ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income benefits ("SSI").  ECF Dkt. #1.  For the following reasons, the undersigned recommends that the Court REVERSE the Commissioner's decision and remands the instant case for further proceedings:

I.      **PROCEDURAL HISTORY**

On February 22, 2006, Plaintiff filed an application for SSI.  Tr. at 93-96.  Plaintiff also filed an application for Disability Insurance Benefits, but that application is not the subject of this appeal. Tr. at 97-101; ECF Dkt. #12 at n. 1.   The SSA denied Plaintiff's claim initially and on reconsideration.  *Id*. at 76-79, 87-89.  Plaintiff filed a request for hearing before an administrative law judge ("ALJ") and on December 30, 2008, an ALJ conducted a hearing where he received testimony from Plaintiff and Deborah Lee, a vocational expert.  Tr. at 83-84, 36-71.  Plaintiff was represented by counsel.  *Id*.

On April 1, 2009, the ALJ issued a partially favorable decision, finding that Plaintiff was not disabled prior to her 55th birthday on March 27, 2009.  Tr. at 9-24.  Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied her request for review.  *Id*.

at 1-8.  On November 25, 2009, Plaintiff filed the instant suit.  ECF Dkt.  #1.  On April 8, 2010, Plaintiff filed a brief on the merits.  ECF Dkt. #12.  On June 29, 2010, Defendant filed a brief on the merits.  ECF Dkt. # 15.  On July 14, 2010, Plaintiff filed a reply.  ECF Dkt. #16.

## II.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from fibromyalgia, migraine headaches, history of surgery for urinary retention, spastic colon and stomach immotility, gastroesophageal reflux disease, and mood disorder, which qualified as severe impairments under 20 C.F.R. §416.920(c).  Tr. at 15.  The ALJ next determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id*.

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform all basic work activities described in 20 C.F.R. § 416.967(b) with restrictions.   Tr. at 17.  Specifically, the ALJ found that Plaintiff can: lift and carry up to 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for six hours of an eight-hour day; she can sit for six hours of an eight-hour day; she is limited to simple, routine tasks with no more than superficial interaction with co-workers, supervisors, and the general public; and she cannot perform work requiring high production quotas or rapid paced work.  Tr. at 17.  The ALJ determined that Plaintiff cannot perform her past relevant work.  Tr. at 21.

Based on the vocational expert's testimony, the ALJ determined that prior to her 55th birthday on March 27, 2009, Plaintiff had the RFC to work in a number of light, unskilled occupations.  Tr. at 22.  Applying the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Guidelines"), the ALJ determined that Plaintiff was disabled following her 55th birthday on March 27, 2009.  *Id*. at 23.

## III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

-2-

2.      An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.      If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.      If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.      If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.      STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).   Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Id.*; *Walters,* 127 F.3d at 532.  Substantiality is based upon the record taken as a whole.  *Houston v. Sec'y of Health and Human*

*Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.     ANALYSIS

### A.     RFC ANALYSIS

Plaintiff contends that the ALJ erred by finding several of her impairments to be severe but failing to factor into his decision limitations caused by fibromyalgia, migraine headaches, or urinary problems.  ECF Dkt. #12 at 10-11.  Plaintiff's argument lacks merit because an ALJ's finding that an impairment is severe does not always require RFC restrictions.  *Griffeth v. Commissioner of Social Sec.*, 217 Fed.Appx. 425, 429, 2007 WL 444808 at **4 (6th Cir. Feb 9, 2007) unreported. The Sixth Circuit has explained:

> RFC is an assessment of the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard*, 276 F.3d at 240. "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D.Mich. July 14, 2004). Howard does not stand for the proposition that all impairments deemed "severe" in step two must be included in the hypothetical. The regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms. 20 C.F.R. § 404.1545(e).

*Griffeth*, 2007 WL 444808 at **4.  Further, the *Yang* court explained that a Step 2 severity determination differs from an RFC determination, and the court provided examples of how a severe impairment may not lead to an RFC restriction:

> The Court believes, however, that conflating the step-two analysis with the RFC determination distorts the meaning and purpose of both. In this Circuit, the step-two burden of establishing a "severe" impairment has been characterized as " de minimis." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988); *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir.1986). The Commissioner states that an impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities, [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... [u]nderstanding, carrying out, and remembering simple instructions, [and][u]se of judgment." 20 C.F.R. § 404.1521. Thus, in *Salmi v. Secretary of Health and Human Services*, 774 F.2d 685 (6th Cir.1985), the Court of Appeals held that an impairment qualifies as "non-severe" only if it "would not affect the claimant's ability to work," regardless of the claimant's age, education, or prior work experience. *Id.* at 691-92. The prevailing view, then, is that only slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe. *Higgs*, 880 F.2d at 862; *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir.1985). Therefore, the application of the requirement to establish "severity" is quite "lenient," and generally it is "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs*, 880 F.2d at 862-63.

-4-

Residual functional capacity, on the other hand, is an "assessment of [the claimant's] remaining capacity for work," once his limitations have been considered. 20 C.F.R. § 416.945(a). It is meant "to describe the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir.2002).

A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other. In this case, for instance, the plaintiff had some vision loss that, under the Secretary's definition, could be found as "severe," but the ALJ reasonably could have concluded that the correction of that vision to 20/25, see tr. at 124, did not limit the plaintiff's ability to perform light work. Likewise, the plaintiff suffered from bilateral carpal tunnel syndrome, but there is evidence that she underwent a right carpal tunnel release procedure in 1994 and the same operation of the left in 1998, both with good success, justifying the conclusion that no significant limitation resulted from that impairment as far as performing light work is concerned.

*Yang*, 2004 WL 1765480 at *4-*5.

The ALJ in this case considered the effects of Plaintiff's fibromyalgia on her RFC.  Tr. at 19. He noted that there was little evidence of treatment for fibromyalgia, and neither examining physician Mark Pellegrino nor Plaintiff's primary care physician has indicated that Plaintiff has work related limitations due to fibromyalgia.  *Id*.  Plaintiff directs the court to records documenting her complaints of tingling, numbness, and stiffness in her arms, shoulders, and back.  ECF Dkt. #12 at 11.  This evidence demonstrates only her maladies.  See *Howard*, 276 F.3d at 240 ("RFC is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from").  The ALJ properly considered that no physicians opined that Plaintiff had work-related limitations resulting from her condition.  Therefore, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision regarding fibromyalgia.   See *Walters,* 127 F.3d at 528.

The ALJ also noted that Plaintiff was prescribed medications for migraines and she sees a chiropractor.  Tr. at 19.  The ALJ determined that the evidence did not establish that Plaintiff's migraine headaches would cause a significant number of work interruptions or absences.  *Id*.  Here, the undersigned recommends that the Court find that the ALJ's determination is not supported by substantial evidence.

Initially, it is important to note that the ALJ determined that the evidence does not establish

that Plaintiff's migraines would cause "a significant number" of work interruptions or absences.  Tr. at 19.[1] [2]  It is unclear what the ALJ considered to be "significant" because his decision does not define the term.  Notably, he asked the vocational expert if any jobs were available for a hypothetical person with Plaintiff's RFC.  Tr. at 62-63.  After the vocational expert identified available jobs, the ALJ asked how often an individual could be off task, and the vocational expert responded that such an individual could be off task 20 percent of the time, or 6-10 minutes per hour.  Tr. at 64.  The ALJ asked how many days a person could be absent from work and still perform the jobs that the vocational expert identified.  *Id.* at 65.  The vocational expert responded that an individual could be absent 5-10 days total a year, "no more than a day a month at least."[3]  *Id.*  Therefore, she initially stated that Plaintiff could work if she missed one day per month.  However, on examination by Plaintiff's attorney, the vocational expert testified that if Plaintiff would miss one or more days per month on average, none of the jobs she identified would be available.  *Id.*  The undersigned is not able to reconcile the vocational expert's testimony.  Without the ALJ's definition of "significant," and without clarification of the vocational expert's contradictory testimony, the undersigned

---

[1]  Defendant contends that time off during the day or days missed per month to accommodate migraine headaches are not functional limitations, but an attendance issue.  ECF Dkt. #15 at 9.  Defendant cites no law in support.  Further, the import of Defendant's argument is not apparent.  The undersigned fails to see how Defendant can make a meaningful distinction between impairment-related absenteeism and functional limitations.  *See Dent v. Astrue*, No. 07-2238-MaP, 2008 WL 822078 at *18  (W.D.Tenn. Mar. 26, 2008), unreported (opinion of magistrate judge, which a district judge subsequently adopted: "The court submits that on remand, in connection with the ALJ's evaluation of Dr. Cannon's opinions and RFC assessment, the ALJ should address Dr. Cannon's opinion regarding Dent's frequent absenteeism and the impact it has on her ability to work, which may require taking testimony from a vocational expert.");  *see also Demyer v. Astrue*, No. 5:09CV14-J, 2009 WL 3710726 at *4 (W.D.Ky. Nov. 4, 2009), unreported ("the VE testified that absences from work, due to migraine headaches or any other reason, in excess of two to three days per month would not be tolerated by most employers ").  If an RFC is an assessment is a determination of what a claimant can do despite his or her impairment (SSR 95-5P), then it must consider whether the claimant is able to attend work.

[2]  The ALJ's treatment of treating source opinions will be discussed below.  However, it should be noted here that Dr. Babai opined that, due to headaches and fibromyalgia, Plaintiff would have no useful ability to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. at 360.  He further opined that she would have serious limitations in the ability to maintain regular attendance and to be punctual within customary, usually strict tolerances.  *Id.*

[3]  Although, she states, "That's kind of the high end actually."  Tr. 65.  But, she did not initially state it was out of the range of employability.

recommends that the Court find the ALJ's decision to lack substantial evidence in this regard.

Of note, the ALJ also considered the fact that Plaintiff was able to work part-time with her headaches.  Tr. at 19.  However, the ALJ determined that this work did not constitute substantial gainful activity.  Tr. at 15; *see also* Tr. at 43, 133.  Therefore, to the extent that the ALJ determined Plaintiff's ability to engage in this work evidenced an ability to participate in a competitive work environment, the undersigned recommends that the Court find the ALJ's decision to lack substantial evidence.

In finding that the evidence does not establish that Plaintiff's migraines would cause "a significant number" of work interruptions or absences, the ALJ reasoned that Plaintiff "initially testified that she had a migraine headache every day.  She later testified that she has migraines four to seven times a week."  Tr. at 19.  The ALJ's observations mischaracterize the record.  Contrary to the ALJ's assertion, Plaintiff initially testified that she gets migraine headaches "**almost** daily."  Tr. at 47 (emphasis added).  This testimony is not inconsistent with her subsequent claim that she gets migraines four to seven times a week.  *See* Tr. at 48.  Therefore, the ALJ's reasoning in this regard is inadequate to support his conclusion.

The ALJ additionally reasoned that "[t]here is little evidence of treatment in the way of migraine headaches. Ms. Harmon is prescribed migraine medications and sees a chiropractor."  Tr. at 19 (citations omitted).  The chiropractor's notes thoroughly document Plaintiff's complaints and treatment for headaches.  Tr. at 282-96.  Plaintiff had been prescribed Midrin, Imitrix, and Fioricet for migraines.  Tr. at 195, 369.  The ALJ offered no explanation as to why he concluded that Plaintiff's treatment constituted little evidence, or the treatment that would constitute more than a little evidence of treatment.  Accordingly, the undersigned recommends that the Court find that ALJ's conclusion regarding Plaintiff's migraine headaches is not supported by substantial evidence and requires remand.

Lastly, the ALJ considered Plaintiff's urological impairments.  He concluded that treatment notes from Plaintiff's urologist indicated that medications have been effective in controlling her symptoms.  Tr. at 19.  In her reply brief, Plaintiff contends that she reported urinary frequency every 1-2 hours (Tr. at 344), she underwent multiple procedures to correct her problems, but they have

-7-

never been fully successful (Tr. at 350-53), and in February, 2008, Plaintiff's doctor noted urinary incontinence that had been occurring for months and that lifting heavy objects aggravated her symptoms (Tr. at 335).  ECF Dkt. #16 at 3.  Nevertheless, the February 27, 2008 note that Plaintiff cites also notes that Plaintiff stated she had "no problems at this time."  Tr. at 335.  Further, on August 27, 2008, Plaintiff reported that she had "little to no leakage."  *Id*. at 332.  The undersigned recommends that the Court find that the ALJ's conclusion is supported by substantial evidence, even if other evidence exists to the contrary since a reasonable mind could conclude that Plaintiff's condition was controlled with medication and she had no work related limitations resulting from her urinary problems.  The ALJ's opinion is supported by substantial evidence in regard to Plaintiff's urinary problems.

For the foregoing reasons, the undersigned recommends that Court reverse  the ALJ's RFC determination with regard to his assessment of Plaintiff's migraine headaches, but affirm it in all other respects.

### B.    Credibility Assessment

Plaintiff also contends that the ALJ erred in assessing her allegations of disabling pain.  ECF Dkt. #12 at 13.  Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Commissioner of Social Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011), slip op. citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001);  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390(6th Cir. 2004).  Nevertheless,  "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997).

The social security regulations establish a two-step process for evaluating pain.  *See* 20 C.F.R. § 404.1529 , SSR 96-7p.  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.  *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v.*

*Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986).  Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms.  *See id.*  Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p.  *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors.  *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination.  *See Casey*, 987 F.2d at 1234.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence.  *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In this case, the first prong is satisfied because the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms.  Tr. at 18.  The ALJ's finding regarding the second prong is at issue.  Plaintiff contends that the ALJ erroneously reasoned that: Plaintiff's "earnings record indicates that she was never particularly motivated to work"; "[t]here is no apparent reason for [Plaintiff's] alleged disability onset date * * * and she did not apply for benefits until nearly four years later"; Plaintiff worked and earned "significant amounts" of over $4,000 in 2006 and over $6,000 in 2007; and Plaintiff "did not stop working as a social worker due to any medically determinable impairment."  ECF Dkt. #15 at 13-14.

Even if these considerations are improper, the Court should find that any error by the ALJ in considering them harmless.

The Sixth Circuit has held that an ALJ's failure to provide detailed reasons for a credibility determination can constitute harmless error where the ALJ considered the subjective accounts of pain along with objective medical evidence. *Spicer v. Apfel*, 15 Fed. Appx. 227, 234 (6th Cir. July 16, 2001). Here the ALJ did not fail to provide detailed reasons, but some of the reasons he did provide are arguably improper. Nevertheless, the ALJ ultimately considered the appropriate factors under SSR 96-7p.

The ALJ in this case considered, but did not emphasize, the lack of objective medical findings by noting that Plaintiff walked with a normal gait, was able to toe and heel walk, and had no difficulty balancing. Tr. at 19; *see also Rogers,* 486 F.3d at 248 ("the nature of fibromyalgia itself renders . . . emphasis upon objective findings inappropriate."). Further, the ALJ acknowledged that Dr. Pellegrino diagnosed fibromyalgia. *Id*. He noted that 16 of 18 trigger points were positive. *Id*. The ALJ ultimately noted that Plaintiff's primary care physician has not indicated that she has any work-related limitations due to fibromyalgia. *Id*. The undersigned recommends that the Court find this treatment of the medical evidence to be proper. The ALJ did not improperly emphasize the lack of objective findings, and he ultimately relied on the lack of physician-endorsed work-related restrictions.

The ALJ went on to consider Plaintiff's activities of daily living, including her abilities to care for her personal needs, cook, clean, drive, and shop. Tr. at 21. He also considered that her prescribed medications do not cause any side effects that would interfere significantly with her ability to perform work within the RFC that the ALJ outlined. *Id*.

Since the ALJ properly considered the medical evidence an the other factors articulated in SSR 96-7p, the undersigned recommends that the Court find his credibility assessment to be supported by substantial evidence.

### C.    Treating Source Opinions

Lastly, Plaintiff contends that the ALJ erred in discounting opinions from treating psychiatrist Dr. Babai, as well as two opinions from Northeast Ohio Behavioral Health ("NEOB") treating

-10-

psychiatrist C. Seiple, M.D., two questionnaires completed by NEOB counselors, and a questionnaire completed by Diana Barkman, LISW (collectively, "treating source opinions").  ECF Dkt. #12 at 15; Tr. at 221-25, 247-51, 360-62.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."  20 C.F.R. § 404.1527(d)(2); 416.927(d)(2).  If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2)(i),(d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record.  20 C.F.R. § 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544, quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even

-11-

where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243,

citing *Wilson*, 378 F.3d at 544.

The undersigned recommends that the Court find that the ALJ in this case has failed to

clearly consider whether the treating source opinions are entitled to controlling weight as 20 C.F.R.

§ 416.927(d)(2) requires.  Instead, the ALJ directly proceeded to weigh the opinions against other

evidence of record.  This procedural failure constitutes error.  *See Carroll v. Comm'r of Soc. Sec.*,

No. 1:09CV2580 (ECF Dkt. # 21 at 5-8) (N.D. Ohio January 28, 2011), unreported; *Barcelona v.*

*Astrue*, No. 3:06CV382, 2008 WL 321306 at *5 (S.D.Ohio Feb 1, 2008) unreported.

In weighing the treating source opinions, the ALJ concluded as follows:

> I resolve the conflict between the treatment notes and the questionnaires by giving
> greater weight to the treatment notes.  The questionnaires were solicited for the
> purpose of supporting claimant's desire to collect benefits.  The treatment notes, in
> contrast, were prepared in the course of mental health treatment and for the actual
> purpose of mental health treatment, so they are inherently more reliable.

Tr. at 21.  The ALJ's decision is flawed for several reasons.

Most obviously, the ALJ failed to articulate the weight given to the treating source opinions.

He stated that he gave greater weight to the treatment notes, but was silent as to the weight he

afforded the actual treating source opinions.  *Kalmbach v. Commissioner of Social Sec.*,  No.

09-2076, 2011 WL 63602 at *7 (6th Cir. Jan. 7, 2011), slip op. ("Even if the ALJ does not give

controlling weight to a treating physician's opinion, he must still consider how much weight to give

it. . .").  Not only did the ALJ fail to state the weight he afforded to the treating source opinions, but

he also failed to consider all of the appropriate factors in weighing the opinions set forth in 20 C.F.R.

§ 416.927(d)(2).  The ALJ offered no discussion of the length of the treatment relationship, the

frequency of the examinations, the nature and extent of the treatment relationship, the supportability

of the opinions with medical signs, laboratory findings, and detailed explanations, the specialty of

the treating physician, and other factors such as the physician's understanding of social security

disability programs, and familiarity of the physician with other information in the claimant's case

record.

To further confound the issue, the ALJ acknowledged that the treating source opinions

contain greater restrictions than those that the he ultimately determined to apply to Plaintiff.  Tr. at

20; *see also Wilson*, 378 F.3d at 544  ("The DeWys opinion identified greater restrictions on Wilson's ability to work than those ultimately found by the ALJ, and stated that these deficits had been in effect since December 31, 1993. . .The ALJ's summary dismissal of DeWys's opinion fails to meet the requirement that the ALJ "give good reasons" for not giving weight to a treating physician. ").  Accordingly, the undersigned recommends that Court find that the ALJ has failed to articulate the weight afforded to the treating source opinions.

Further, the ALJ's conclusion is of little use to the Court or the claimant because of his failure to identify any opinions that he afforded greater weight. "The regulations at 20 CFR 404.1527(a) and 416.927(a) define medical opinions as 'statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.' "  SSR 95-5P.  The ALJ has provided absolutely no guidance as to what portions of the treatment notes contain or constitute opinions.  Therefore, his decision to afford the treatment notes greater weight than the treating source opinions offers no insight into how he actually weighed the treating source opinions.  Unlike the treatment notes, these documents explicitly outline the treating sources' judgments about the nature and severity of Plaintiff's impairment, and they are readily identifiable by the Court and the claimant.

In sum, it is not clear that the ALJ gave the treating source opinions any weight.  Rather, it appears that he has attempted to circumvent the treating source rule by giving greater weight to his own interpretation of the treatment notes.  The ALJ's failure to identify other opinion evidence contained in the treatment notes leaves the Court to determine whether the notes actually contain opinions that are inconsistent with the formal treating source opinions or whether the ALJ has simply formulated his own medical opinion as a layperson interpreting the treatment notes.  *See Martin v. Commissioner of Social Sec.*, No. 1:08-CV-00301, 2009 WL 3110203 at *11 (S.D.Ohio Sept. 24, 2009), unreported ("An ALJ, as a layperson, may not substitute his own opinions for those of the expert doctors.") citing *Brown v. Apfel*, 174 F.3d 59 (2nd Cir.1999); *Miller v. Chater*, 99 F.3d 972 (10th Cir.1996).

-13-

Plaintiff cites *Freund v. Astrue*, No. 5:09-CV-334, 2010 WL 1258017 (N.D. Ohio Mar. 30, 2010), unreported, for the proposition that it is improper to give greater weight to treatment notes because they are inherently more reliable. ECF Dkt. #12 at 16. Defendant contends that *Freund* is distinguishable because the ALJ in this case explained that treating source opinions conflicted with treatment notes <u>and</u> other evidence of record. ECF Dkt. #15 at 14 (emphasis in original). The Court should find that *Freund* is not distinguishable because Judge Gwin stated:

> In this case, the Court finds that the ALJ inadequately explained why he disregarded Dr. Dinsmore's opinion and further provided no explanation as to what weight he ultimately gave that opinion. This procedural error itself constitutes a lack of substantial evidence. *Rogers*, 485 F.3d at 243. . .As to question of weight, the ALJ stated he would give "greater weight" to the treatment notes because they "were prepared in the course of medical treatment for the actual purpose of medical treatment, and so they are inherently more reliable."

*Freund*, 2010 WL 1258017 at *3. The ALJ in this case used precisely the same language, and he failed to identify the weight he ultimately gave to the explicit opinions proffered by the treating sources. Based upon *Freud*, the undersigned recommends that the Court find that the ALJ's decision lacks substantial evidence.

The undersigned recommends that the Court find an additional flaw in the ALJ's logic. The ALJ considered treatment notes inherently more reliable because they are maintained in the course of treatment; however, his logic undermines his conclusion.[4] Treatment notes are maintained for the purpose of improving a patient's condition, and they often may often speak in terms of maladies, not functional capacities. *Cf. Griffeth*, 2007 WL 444808 at *4 ("The RFC describes 'the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.' ") quoting *Howard*, 276 F.3d at 240. Therefore, it is improper for the ALJ to assign greater weight to treatment notes, which are in most instances not written with the intention of outlining functional limitations. When the ALJ considered the treatment notes to be inherently more reliable than treating source opinions, he simply chose to abandon the treating source rule, which requires him to look at the

---

[4]  Notably, the ALJ cited no law or regulation providing a basis for his conclusion.

treating sources opinions and afford them controlling weight if they are "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2). Here, the ALJ did not follow the regulations and implemented a rule of logic that would always displace the treating source's opinion and permit the ALJ to substitute his own lay judgment on a review of the treatment notes.

The Sixth Circuit has held that the good reason requirement "does not require conformity at all times" and such a failure amounts to harmless error:

> if the ALJ has met the goals of the procedural requirement-to ensure adequacy of review and to permit the claimant to understand the disposition of his case-even though he failed to comply with the regulation's terms. *Id.* [*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)]. An ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.

*Coldiron*, 2010 WL 3199693 at *4, citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 470-472 (6th Cir. 2006) and *Hall v. Comm'r of Soc. Sec.*, 148 Fed. App'x 456, 464-465 (6th Cir. 2005).

Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the Court not reverse a case where ALJ failed to observe the requirements for evaluating the weight given to a treating physician. *Wilson*, 378 F.3d at 547. The Sixth Circuit stated in *Rogers*:

> Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers*, 486 F.3d at 243. The treating source opinions in the instant case are not "patently deficient" such that they could not be credited. *See* Tr. at 221-25, 247-51, 360-62. The NEOB opinions describe objective clinical observations, diagnoses, and limitations. Tr. at 221-25, 247-51. Further, the NEOB opinions indicate that medical records are available from Plaintiff's primary care physician. *Id.* Dr. Babai's opinions explain the effects of Plaintiff's stress levels on her abilities to concentrate, stay on task, and learn new skills. Tr. at 360-62. He also explained that Plaintiff has been tried on various medications to help with depression, anxiety and concentration, but she

-15-

experienced side effects.  *Id*.  Since the ALJ failed to indicate that he considered all necessary factors and failed to articulate the weight given to the treating source opinions, the Court should reverse and remand this case for the ALJ to reconsider Plaintiff's RFC and properly apply the treating physician rule to those opinions.  *See Potter v. Astrue*, No. 3:09CV169, 2010 WL 2679754, at *9 (S.D. Ohio June 2, 2010, citing *Rogers*, 486 F.3d at 246.)("Despite citing some reasons for discounting Dr. Gollamudi's opinion, then, ALJ Armstead never fully explained how those reasons affected the weight he gave to Dr. Gollamudi's opinion, or even what weight he ultimately accorded that opinion.").

## VI.  CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and REMAND the instant case to the administrative law judge for further proceedings consistent with this Report and Recommendation.

DATE: February 8, 2011                                   */s/George J. Limbert*
                                                                        GEORGE J. LIMBERT
                                                                        UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-16-